UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**DEREK RICHARDSON,**               )
                                    )
       **Plaintiff,**  )
                                    )
       v.              )    Civil Action No. 12-421 (RMC)
                                    )
**AMERICAN SECURITY PROGRAMS,**     )
**INC.,**                           )
                                    )
       **Defendant.**  )
_____ )

**OPINION**

      Plaintiff Derek Richardson was employed as a security guard for American Security Programs, Inc. (ASP). Mr. Richardson brought this suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, alleging that (1) ASP discriminated against him due to his gender when it removed him from a supervisory position and replaced him with a woman, and (2) ASP retaliated against him by declining to put him on the work schedule after he complained of discrimination. ASP moves for summary judgment. The motion will be granted in part and denied in part: judgment on the discrimination claim will be entered in favor of ASP, but the motion will be denied on the retaliation claim.

**I. FACTS**

      Mr. Richardson worked as a security guard for ASP from December 7, 2009, until April 20, 2009, at 500 and 800 North Capitol in Washington, D.C. Compl. [Dkt. 1] ¶¶ 9, 11. He was assigned as an armed security officer on ASP's contract with the Department of Homeland Security. During this time period, he also worked for two other employers: Coastal International Security and Wackenhut Corporation. Mot. for Summ. J. (MSJ) [Dkt. 16], Ex. A

1

(Richardson Dep.) at 53. Among these three jobs, Mr. Richardson worked 101 to 106 hours per week. *Id*. at 54. ASP initially scheduled Mr. Richardson's shift to accommodate his other jobs, permitting him to start work later than the regularly scheduled shift. *Id*. at 68. Mr. Richardson declares that ASP allowed the flexible schedule because it was "desperately in need of officers." Opp'n [Dkt. 17], Ex. 1 (Richardson Decl.) ¶ 3.

When Mr. Richardson started working for ASP, Lieutenant Barbara Powell was his supervisor. Richardson Dep. at 83, 90. Lt. Powell had worked at the North Capitol site since before ASP took over the security contract there. Sergeant Osman Kamara ran day-to-day operations at the site and set the work schedules. *Id*. at 78. ASP's Program Manager, Mark Phinney, oversaw the overall security operations at 500 and 800 North Capitol.

ASP requires all of its security officers stationed at 500 and 800 North Capitol to maintain a gun certification. In February 2010, Lt. Powell failed to renew her certification on time. In accordance with ASP policy, ASP placed her on leave and gave her thirty days to renew the certification. ASP appointed Sergeant Alimany Kanu as supervisor in place of Lt. Powell during her initial thirty-day absence. *Id*. at 97.

When the initial thirty-day period expired, Lt. Powell still had failed to renew her weapons certification. On March 28, 2010, ASP placed Mr. Richardson in the supervisor position formerly held by Lt. Powell. *Id*. at 99. Mr. Richardson believed that this placement was "permanent." Opp'n at 2. ASP allows supervisors to work a flexible schedule. In April 2010, however, ASP ceased its practice of allowing security guards to work a flexible schedule. MSJ, Ex. B (Phinney Decl.) ¶ 6. Mr. Richardson was not aware of the policy change. Richardson Dep. at 166. Mr. Richardson believes that ASP allowed two security guards, Casandra Davis

2

and a "Mr. Henry" to maintain flexible shifts even after the ASP scheduling policy changed. *See* Opp'n at 2-3.

In late March 2010, Lt. Powell passed her gun certification, but she was one day past the thirty-day time period in which she was required to recertify in order to maintain her position and shift. Lt. Powell filed a grievance, with union representation, seeking reinstatement. ASP reinstated Lt. Powell as a security officer, but not a supervisor, and she began working again on April 3, 2010.

Lt. Powell pursued a second grievance, this time without union representation, seeking to return to her prior position as a supervisor.[1] *See* MSJ, Ex. D (Reichelt Decl.)[2] ¶¶ 5-6. In the meantime, Mike Kilby, the U.S. Government's Agency Technical Representative at the building, who had worked with Lt. Powell since before ASP took over the contract, asked ASP about Lt. Powell's apparent demotion. Reichert Decl. ¶ 7. Thereafter, ASP reinstated Lt. Powell to the supervisory position because (1) Mr. Kilby had inquired and (2) Lt. Powell had worked at the North Capitol site for a long time. *Id.*

Mr. Phinney scheduled Lt. Powell for her previous supervisor shift, on which Mr. Richardson had been working. MSJ, Ex. C (Phinney Dep.) at 43. Because Lt. Powell was returned to that shift, Mr. Richardson was no longer scheduled to work as a supervisor. The last date on which Mr. Richardson worked for ASP was April 20, 2014. *See* Opp'n, Ex. 1, Att. C (Change in Status Form) at 1. He did not work any shifts, either as a supervisor or as a security

---

[1] ASP has a grievance process whereby any employee, including a supervisor, can raise concerns regarding discrimination or any other matter. MSJ, Statement of Undisputed Facts ¶ 5; *see* Opp'n at 2 (indicating that Plaintiff does not dispute this fact); *see also* Richardson Dep. at 73 (acknowledging the ASP policy permitting all employees to utilize a grievance procedure).

[2] Jennifer Reichelt was ASP's Vice President of Human Resources at the time.

guard, after he lost the supervisor spot. *See* Richardson Decl. ¶ 14. Over four months later, on September 5, 2010, ASP terminated Mr. Richardson. *See* Richardson Dep. at 219.

Sometime after his last shift at ASP, Mr. Richardson submitted a written complaint of gender discrimination to ASP.[3] Mr. Richardson exhausted federal administrative remedies by filing a timely charge with the Equal Employment Opportunity Commission (EEOC). Compl. ¶ 6. He received a Right To Sue Letter from the EEOC on December 15, 2011, and filed this Complaint on March 15, 2012. *Id*. ¶ 7. Count I of the Complaint alleges that ASP discriminated against Mr. Richardson because of his gender "in removing him from his position and replacing him with a female who previously lost her supervisory position because she was not able to qualify with her weapon within 30 days, as required." *Id*. ¶ 18. Count II alleges retaliation in that after Mr. Richardson complained to Sgt. Kamara and Mr. Phinney of gender discrimination, ASP did not offer him any shifts and constructively terminated him. *Id*. ¶ 25.

## II. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). On summary judgment, the burden on a moving party who does not bear the ultimate burden of proof may be satisfied by making an initial showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing'—that

---

[3] The parties dispute the date on which Mr. Richardson first submitted a complaint of gender discrimination to ASP. This is discussed in more detail below with respect to the retaliation claim.

is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. The burden then shifts to the nonmovant to demonstrate the existence of a genuine issue of material fact. The nonmovant may not rest on mere allegations or denials, but must instead by affidavit or otherwise, present specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *see also Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (nonmovant must present specific facts that would enable a reasonable jury to find in its favor). "[B]are allegations of discrimination are insufficient to defeat a properly supported motion for summary judgment." *Burke v. Gould*, 286 F.3d 513, 520 (D.C. Cir. 2002).

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. In addition, if the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### III. ANALYSIS

#### A. Discrimination

Title VII prohibits status-based discrimination, *i.e.*, it prohibits an employer from discriminating on the basis of race, color, religion, sex, or national origin in hiring decisions, in compensation, terms, and conditions of employment, and in classifying employees in a way that

5

would adversely affect their status as employees. 42 U.S.C. § 2000e-2.[4] To prove discrimination, a plaintiff can point to direct evidence linking the adverse personnel action to a forbidden motive. If the plaintiff offers direct evidence of discriminatory intent, such evidence generally entitles the plaintiff to a jury trial. *See Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576 (D.C. Cir. 2013) (per curiam) (quoting *Vatel v. Alliance of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011)). If a plaintiff does not offer direct evidence and instead points only to circumstantial evidence, courts apply the burden shifting framework set forth in *McDonnell Douglas*. *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Here, Mr. Richardson concedes that there is no direct evidence of discrimination, and thus the burden shifting framework applies. *See* Opp'n at 7.

Under *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of discrimination by showing (1) that he is a member of a protected class; (2) that he suffered an

---

[4] Section 2000e-2 provides:

> It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2. The Supreme Court has distinguished between claims asserting "status-based discrimination" under § 2000e-2 and claims asserting retaliation under § 2000e-3. *See Univ. of Texas SW Medical Ctr. v. Nasser*, 133 S. Ct. 2517, 2525 (2013).

adverse personnel action; (3) under circumstances giving rise to an inference of discrimination. *Royall v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 548 F.3d 137, 144 (D.C. Cir. 2008). Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the employer's action. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *McDonnell Douglas*, 411 U.S. at 802. If the defendant asserts a nondiscriminatory reason for the employment action, the plaintiff still may prove discrimination by showing "pretext," *i.e.*, that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *Burdine*, 450 U.S. at 253; *McDonnell Douglas*, 411 U.S. at 804; *see also Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003). When an employer articulates a legitimate, non-discriminatory reason, the existence of a *prima facie* case becomes irrelevant and the district court determines, based on all the evidence, whether a reasonable jury could conclude that the employer's proffered non-discriminatory reason was not the actual reason but was pretext for intentional discrimination. *Brady v. Office of the Sgt. at Arms*, 520 F.3d 490, 493-94 (D.C. Cir. 2008).

A Title VII plaintiff must demonstrate causation, *i.e.*, that there is a link between the injury sustained and the wrong alleged. *Univ. of Tex. SW Med. Ctr. v. Nasser*, 133 S. Ct. 2517, 2522 (2013). "An employee who alleges status-based discrimination under Title VII need not show that the causal link between injury and wrong is so close that the injury would not have occurred but for the act." *Id*. Such a plaintiff need show only that "the motive to discriminate was one of the employer's motives, even if the employer also had other lawful motives that were causative in the employer's decision." *Id*. at 2522-23.[5]

---

[5] In 1991, Congress codified the motivating factor standard by adding § 2000e-2(m) to Title VII:

7

Count I of Mr. Richardson's Complaint alleges that ASP discriminated against Mr. Richardson because of his gender "in removing him from his position and replacing him with a female who previously lost her supervisory position because she was not able to qualify with her weapon within 30 days, as required." Compl. ¶ 18. Because ASP has asserted nondiscriminatory reasons for removing Mr. Richardson from the supervisor position, the Court proceeds to this question: has Mr. Richardson raised a genuine issue of material fact that ASP's nondiscriminatory reason for his removal was pretextual and, in fact, the real reason was motivated by gender discrimination? *See Brady*, 520 F.3d at 494.

ASP contends that it removed Mr. Richardson from the supervisory position simply because it reinstated Lt. Powell. Ms. Reichelt explained ASP's reasons for the reinstatement of Lt. Powell as supervisor:

> Upon listening to Powell's grievance, I, along with others from ASP determined that Powell's tenure with the building, her one-day lapse in qualification, her positive relationship with Mike Kilby, the U.S. Government's Agency Technical Representative at the building, and Mr. Kilby's recent inquiry/dissatisfaction into Powell's apparent demotion were substantial grounds to reinstate her to the supervisory position.

Reichert Decl. ¶ 7. Lt. Powell had been working in the supervisor position for over six years before Mr. Richardson started with ASP. *See* Opp'n, Ex. 1, Att. D (Reichelt Resp. to EEOC

---

> (m) Impermissible consideration of race, color, religion, sex, or national origin in employment practices
>
> Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.

42 U.S.C.A. § 2000e-2(m). Congress also limited the damages available to a plaintiff who proves status-based discrimination under § 2000e-2(m). *See id*. § 2000e-5(g)(2)(B).

8

Charge) at 4; *see also id*. ("Her seniority, not her gender, is what was a determining factor in the reinstatement to her supervisory post."). Mr. Phinney scheduled Lt. Powell for her old shift—the one on which Mr. Richardson had been working. Phinney Dep. at 43. As a consequence, ASP removed Mr. Richardson from the supervisory position.

The fact that the same person both promoted Mr. Richardson to a supervisory position and removed him from that position undermines his discrimination claim. *See Waterhouse v. District of Columbia*, 124 F. Supp. 2d 1, 12-13 (D.D.C. 2000) (the fact that the same officials who fired plaintiff hired her eleven months before raised a presumption of nondiscrimination), *abrogated on other grounds by Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 851 (D.C. Cir. 2006). Mr. Phinney appointed Mr. Richardson to the supervisor position, and soon thereafter Mr. Phinney removed Mr. Richardson from that position when Lt. Powell was reinstated. This sequence raises an inference of nondiscrimination.

Mr. Richardson attacks ASP's reasons for reinstating Lt. Powell by asserting that Mr. Kilby, the client representative at the site, did not attempt to influence ASP's decision:

> Mr. Kilby told me personally that he made inquiry because Mr. Powell told him she was no longer supervisor and he did not know why. Kilby explained to me that he made the inquiry because he wanted to know what happened to her. He adamantly denied attempting to influence Defendant's choice of supervision in any way. He denied asking Defendant to reinstate Powell to her supervisory position, which he admitted would have been improper.

Richardson Decl. ¶ 8; *see also* Opp'n, Ex. 2 (Kamara Dep.) at 53-54 (testifying that Mr. Kilby said that he did not have anything to do with what ASP did with the supervisor position). Mr. Richardson cites only his own declaration and Mr. Kamara's deposition, not a sworn declaration or deposition from Mr. Kilby. The statements regarding what Mr. Kilby told Mr. Richardson and Mr. Kamara are hearsay. "On summary judgment, statements that are impermissible hearsay

9

or that are not based on personal knowledge are precluded from consideration by the Court." *Riggsbee v. Diversity Servs., Inc.*, 637 F. Supp. 2d 39, 46 (D.D.C. 2009); *see also Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007) (a plaintiff's statements about another employee's comment was "sheer hearsay" that "counts for nothing" on summary judgment).

Even if the Court were to consider the hearsay statements of Mr. Kilby, those statements do not undermine ASP's asserted grounds for Lt. Powell's reinstatement: (1) Mr. Kilby in fact had asked about Lt. Powell's absence and (2) Lt. Powell had worked as supervisor at that location for years. The hearsay statements do not change the fact that Lt. Powell's gun certification lapsed only for one day beyond the thirty days given for her recertification. The reasons for Lt. Powell's reinstatement were not based on her gender and do not relate to Mr. Richardson's gender. Mr. Richardson identifies only the obvious gender difference, which, standing alone, does not raise a genuine issue. Mr. Richardson does not identify evidence that supports his claim that the nondiscriminatory reasons for his removal as supervisor were pretextual and the real reason was gender discrimination.

Mr. Richardson complains that he knows two male officers who lost their schedules because they failed weapons qualifications within 30 days and that Lt. Powell was treated more favorably than these men. Richardson Decl. ¶ 17. Mr. Richardson stated in his declaration:

> I know of male officers who lost their schedule because of failing their weapons qualifications within 30 days—Lynn Roddy and Olubomi Temidayo. In both instances they had to bid new schedules after they got their weapons qualifications back. In each instance their schedule was put up for bid and they were not given the schedule back even after they finally did qualify with their weapon. I know that Defendant treated both females Barbara Powell and Deshawn Thornton differently. In both instances, they were given their prior schedules back even though they failed to maintain qualifications with their weapon within a 30 day period. I

> did everything in accordance with company policy but had my position and schedule taken away for the benefit of Powell, who violated several policies, including failing to maintain weapons qualifications and then going around the chain of command and appealing to [Mr. Kilby] to seek to get him to influence Defendant to get her position back. Defendant regularly announced that seeking to go around the chain of managerial command was a serious breach of company policy. I believe that the company has given false explanations for my adverse treatment in order to conceal their discriminatory motive against me.

*Id*. Mr. Richardson attempts to support his disparate treatment theory—that ASP treated Lt. Powell more favorably because she is a female—through his assertion that ASP treated her more favorably than him with regard to weapons certifications.[6]

Mr. Richardson can proffer evidence of gender discrimination by demonstrating "disparate treatment," *i.e*., that he was treated less favorably than similarly situated women. *See Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1513-14. Proof of discriminatory motive is critical for such claims. *Anderson v. Zubieta*, 180 F.3d 329, 338 (D.C. Cir. 1999). To show that one employee was "similarly situated" to another, a plaintiff must demonstrate that "all of the relevant aspects" of plaintiff's employment situation were "nearly identical" to those of the comparable employee. *Neuren*, 43 F.3d 1514. In *Neuren*, for example, the D.C. Circuit concluded that a female associate at a law firm who was terminated due to her inability to get along with others was not similarly situated to a less senior male associate who had trouble with

---

[6] Mr. Richardson does not claim to be similarly situated to those who lost their schedules due to weapons certification lapses. This never happened to him and was not the asserted reason for his removal from the supervisor position. He also does not assert discrimination claims on behalf of other employees and lacks standing to do so. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (to have Article III standing, a plaintiff must establish: (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision)).

legal writing. *Id.*; *see also Barbour v. Browner*, 181 F.3d 1342, 1345 (D.C. Cir. 1999) (EPA employees with similar job descriptions were not similarly situated because plaintiff was a GS-12 and the other employee was a GS-13 who performed some additional duties).

Mr. Richardson relies on a general and anecdotal allegation—two women retained their shifts at ASP after failing to regain their weapons certifications within the thirty-day period and two men lost their shifts at ASP after failing to regain their certifications within the thirty-day period. The allegation that ASP generally treats women more favorably than men fails because Mr. Richardson did not present evidence that "all of the relevant aspects" of the men's employment situations were "nearly identical" to those of the women. *See Neuren*, 43 F.3d 1514. He does not indicate the length of the weapons certification lapses, the number of years that these employees worked at ASP, or whether any other factor weighed in ASP's decisions regarding these particular men and women. Likewise, Mr. Richardson fails to support his more specific allegation, that ASP treated him less favorably than it treated Lt. Powell. He never lost his gun certification as did Lt. Powell, but he fails to refute ASP's reasons for reinstating Lt. Powell. The client representative (Mr. Kilby) inquired about Lt. Powell and not about Mr. Richardson. Moreover, Lt. Powell had worked as a supervisor at the location for many years, while Mr. Richardson had only been there one year and had worked as a supervisor for a matter of weeks. Because Mr. Richardson's employment situation was not "nearly identical" to Lt. Powell's situation, they were not similarly situated.

Mr. Richardson does not point to evidence raising a genuine issue of material fact that the nondiscriminatory reasons for removing him from the supervisory position were pretextual and the real reason was gender discrimination. Accordingly, summary judgment on the claim of discrimination will be granted in favor of ASP.

### B. Retaliation

In addition to prohibiting discrimination, Title VII also prohibits an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) he engaged in protected activity; (2) he suffered from a materially adverse act;[7] and (3) a causal connection exists between the protected activity and the employer's act. *Holcomb v. Powell*, 433 F.3d 889, 901-02 (D.C. Cir. 2006). "The casual connection component of the *prima facie* case may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985). To satisfy the knowledge requirement, a plaintiff must show that the official responsible for the alleged retaliatory act was aware of the protected activity. *Id*. To satisfy the timing requirement, the proximity between the protected activity and the adverse employment action must be "very close." *Moran v. U.S. Capitol Police Bd.*, 887 F. Supp. 2d 23, 35 (D.D.C. 2012) (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).[8]

---

[7] *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 60 (2006) (to prove retaliation, a plaintiff must show that the employer's actions "would have been materially adverse to a reasonable employee," in a context such that it "would likely have dissuaded a reasonable worker from making or supporting a charge of discrimination").

[8] Some courts have held that time lags of more than three or four months are too long to show retaliatory causation. *Breeden*, 532 U.S. at 274 (adverse action taken twenty months after protected activity "suggests, by itself, no causality at all") (citing with approval *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (finding three-month time gap insufficient to establish temporal proximity)); *Allen v. Napolitano*, 774 F. Supp. 2d 186, 201 n.2 (D.D.C. 2011) ("very close" means within three to four months; *Gustave-Schmidt v. Chao*, 360

13

The same burden-shifting framework that applies to discrimination claims applies to retaliation claims , that is, when the employer articulates a nondiscriminatory reason for the alleged retaliatory action the existence of a *prima facie* case is unimportant. *See, e.g., Prado-Kronemann v. Donovan*, 601 F.3d 599, 603-04 (D.C. Cir. 2010). Instead, "a court reviewing summary judgment looks to whether a reasonable jury could infer retaliation from all the evidence, which includes not only the *prima facie* case but also the evidence the plaintiff offers to attack the employer's proffered explanation for its action and [plaintiff's] evidence of retaliation." *Gaujacq v. EDF, Inc.*, 601 F.3d 565, 577 (D.C. Cir. 2010) (quoting *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009)). Unlike status-based discrimination claims, retaliation claims must be proved according to traditional principles of but-for causation and not the lessened causation test stated in § 2000e-2(m). *Nasser*, 133 S. Ct. at 2533. "[A] plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Id*. at 2534.

Count II of Mr. Richardson's Complaint alleges retaliation. Specifically, Mr. Richardson alleges that he complained to Sgt. Kamara and Mr. Phinney of gender discrimination in May 2010 and that thereafter ASP did not offer him any shifts, resulting in his constructive termination.[9] Compl. ¶ 25. He alleges that one to two weeks after receiving notice that Lt. Powell had been reinstated as supervisor, *i.e.* in May 2010, he hand-delivered a written complaint to Sgt. Kamara and placed a copy in Mr. Phinney's human resource inbox at 800

---

F. Supp. 2d 105, 118-19 (D.D.C. 2004) (adverse action that occurred almost three months after protected activity "pushe[d] the temporal requirement . . . to its outer limit").

[9] The parties agree that ASP did not formally terminate Mr. Richardson until September 2010.

North Capitol. Richardson Decl. ¶¶ 12-13. He emailed his internal complaint to Sgt. Kamara and Mr. Phinney on December 15, 2010. *Id*. ¶ 12.[10]

ASP challenges Mr. Richardson's *prima facie* case, arguing that it did not receive notice of Mr. Richardson's gender discrimination complaint until *after* he was terminated in September 2010. Sgt. Kamara and Mr. Phinney state that they first received notice of Mr. Richardson's complaint when they received his December 15, 2010 email. *See* Kamara Dep. at 68-69; Phinney Dep. at 45. Since the parties dispute when ASP first became aware of Mr. Richardson's complaint, there is a genuine issue of material fact regarding whether Mr. Richardson can prove a *prima facie* case of retaliation.

Even presuming that Mr. Richardson has a *prima facie* case, ASP attempts to thwart his retaliation claim by asserting that it terminated him for a nondiscriminatory reason—that he had not been available to work a security guard shift for many months. This challenge also presents a genuine issue of material fact.

Mr. Richardson last worked for ASP on April 20, 2010. ASP terminated him on September 5, 2010, when he had not worked any shifts for ASP for over four months. Due to his other jobs, Mr. Richardson was available only for a flexible shift, *see* Richardson Dep. at 53-54, 68. ASP did not offer Mr. Richardson any shifts after it removed him from the supervisory position, *see* Richardson Decl. ¶¶ 14-15, explaining that in April 2010, ASP ceased its practice of allowing security guards to work a flexible schedule. Phinney Decl. ¶ 6. ASP asserts that because Mr. Richardson did not tell ASP that he could work a *non*flexible security guard shift

---

[10] At his deposition, Mr. Richardson testified that in May 2010 he hand-delivered and emailed a complaint of discrimination to his supervisor at ASP, but he did not keep a hard copy or an electronic copy. Reply [Dkt. 18], Ex. F (Richardson Dep.) at 115-116. In a sworn declaration, Mr. Richardson corrected his deposition testimony, explaining that he hand-delivered the internal complaint in May 2010 and that he did not email it then, but that he later followed up by sending the complaint via email in December 2010. Richardson Decl. ¶ 12.

and he did not ask to be placed on the work schedule, ASP did not put him on the schedule. Mr. Richardson avers that he was not aware of the policy change, *see* Richardson Dep. at 166, and that ASP allowed two security guards, Casandra Davis and a "Mr. Henry" to keep working flexible shifts even after the scheduling policy allegedly changed. *See* Opp'n at 2-3. He insists that ASP terminated him, not for inactivity or because the scheduling policies actually changed, but in fact because he complained of discrimination. Whether Mr. Richardson's protected activity was the "but for" cause of his termination is an issue of fact for the jury, *see Nasser*, 133 S. Ct. at 2534, and the facts asserted by the parties raise genuine issues, including issues of credibility. Accordingly, the Court will deny ASP's motion for summary judgment as to the retaliation claim.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment [Dkt. 16] will be granted in part and denied in part. Judgment on the discrimination claim will be entered in favor of ASP. There are genuine issues of material fact with regard to the retaliation claim.

Date: July 25, 2014                                         /s/
                                                            ROSEMARY M. COLLYER
                                                            United States District Judge